Chicago, Rock Island and Pacific Railway Company

*v.*

Joseph H. Strong, Admr.

*Opinion filed June 19, 1907—Rehearing denied October 2, 1907.*

1. Master and servant—*servant clothed with authority over others is not their fellow-servant.* A servant upon whom the master has conferred authority to control and direct the movements of the other servants is not, while exercising such authority, their fellow-servant.

2. Railroads—*relation of foreman of a switching crew stated.* The foreman of a switching crew is a fellow-servant of the other members of the crew when engaged in assisting them in their common duties, such as coupling or uncoupling cars, setting or releasing brakes or transmitting signals from one member of the crew to another; but he is not their fellow-servant in originating signals in pursuance of his authority to direct the work, or in performing

any other acts which are incident to his authority and which the other members of the crew have no authority to perform.

3. SAME—*capacity in which foreman of switching crew gave a signal is a question of fact.* In an action for damages for the death of a switchman, caused by the negligence of the foreman of the switching crew in improperly signaling the engineer to back the train, the question whether the signal was given in the foreman's capacity as foreman or in the capacity of a fellow-servant of the switchman is one of fact for the jury.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

CALHOUN, LYFORD & SHEEAN, (W. T. RANKIN, and BENJAMIN S. CABLE, of counsel,) for appellant.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On September 19, 1903, John F. Chapman, a switchman in the employ of appellant, was, while performing his duties as such switchman, caught between two cars and killed. His administrator, who is appellee in this court, brought an action of trespass on the case in the superior court of Cook county against appellant to recover damages for the death of Chapman, alleging in his declaration that death was occasioned by the negligence of a certain foreman of appellant, who was a vice-principal, and not a fellow-servant, of deceased. Appellant interposed the general issue. A trial before a jury resulted in a verdict for $4000 in favor of appellee, upon which the court rendered judgment, after overruling a motion for a new trial and a motion in arrest of judgment. The railway company appealed to the Appellate Court for the First District, and the judgment of the superior court being there affirmed, the company prosecutes a further appeal to this court.

It is contended that the superior court erred in denying appellant's motion, made at the close of all the evidence, for a directed verdict. Reversal is sought on no other ground.

Chapman, at the time of the accident, was a member of a switching crew, composed of O'Brien, foreman; Wishart and Chapman, switchmen or helpers; Wilson, engineer; and Wood, fireman. The day on which the casualty occurred was the first day Chapman had worked with this crew. It was also the first day O'Brien had acted as foreman of the crew or of any other crew of which Wishart or Chapman were members. During the morning of the day in question this crew took twelve cars loaded with corn from one part of appellant's switch yards at South Chicago, in said county, to the elevator of the Rosenbaum Elevator Company, which was situated within the limits of appellant's yards at that place. In the afternoon of the same day the crew received orders to take twelve other loaded cars to the same elevator and to return with the twelve cars which had been taken to the elevator in the morning and which had been unloaded by employees of the elevator company during the day. The main tracks of appellant run north and south near this elevator. The elevator is east of such main tracks and is connected therewith by side-tracks, which extend east from the main tracks through the elevator building. The twelve empty cars stood upon one of the elevator side-tracks. Three of the cars were inside of the elevator building and stood uncoupled, with a space of a few feet separating each car from the next one. The remaining nine cars stood outside and west of the elevator and were likewise uncoupled and separated from each other. As the train approached the elevator, O'Brien, the foreman, who had general charge and control of the movements of this crew, told Chapman and Wishart that the elevator people were "in a hurry for a set," and instructed Chapman to go along the twelve empty cars as soon as they reached the elevator and open the knuckles and place the draw-bars in

position, and when that was done for Chapman to give him (O'Brien) a signal and he (O'Brien) would then signal Wishart, whom O'Brien at the same time directed to stand on top of one of the loaded cars attached to the engine, and that Wishart should then signal the engineer to back the train in hard, so as "to make them all up the first shot." When the elevator was reached the train of loaded cars was backed in upon the elevator side-track, the purpose being to couple all the empty cars together and attach them to the train of loaded cars, then to move the train with the empty cars from the side-track and thereafter return the loaded cars to the same side-track. Chapman, at the direction of O'Brien, made the coupling between the train of loaded cars and the most easterly of the detached empty cars. Chapman and O'Brien then proceeded east along the north side of the empty cars, opening the knuckles and placing the draw-bars of those cars in position to make the couplings when they should be pushed together. O'Brien stopped before they reached the elevator building. Chapman continued his work and passed into the elevator building alone, to arrange the knuckles and draw-bars of the three cars standing inside the building. The most easterly car in the building was an Illinois Central car and the one just west of it was a Santa Fe car. These two cars were equipped with automatic couplers. The coupler on the Illinois Central car was out of order and could not be operated with the pin-lifting device, the lever of which extended to the north side of the car. This defect was latent, and the court, at appellee's request, instructed the jury to disregard the counts charging appellant with negligence in regard to that defect. Chapman, upon discovering that the coupler on the Illinois Central car was out of order, started to pass between the Illinois Central car and the Santa Fe car, which were standing about three feet apart, in order to open the knuckle on the Santa Fe car. The lever to the pin-lifting device of the latter car was on the south side thereof, and

it was sufficient for the purpose of making a coupling to have the knuckle on one of the cars open. In the meantime, O'Brien, without waiting for a signal from Chapman, mounted the second or third car to the west of the elevator building and signaled Wishart to back the train. Wishart repeated the signal to the engineer, the cars backed up, and deceased was caught between the Illinois Central car and the Santa Fe car, while passing between them for the purpose aforesaid, and thereby killed.

The act of O'Brien in giving the signal to back the train is the basis of the negligence charged in the counts of the declaration upon which the case was submitted to the jury. Appellant does not deny that O'Brien was negligent in giving the signal to back the train, but contends that the giving of such signal was the act of a fellow-servant of Chapman.

It is first urged by the appellant that all members of a switching crew are, as a matter of law, fellow-servants. This contention is not in accordance with the law of this State. If the master has conferred upon one member of the crew authority to control and direct the movements of the other members of the crew, then, in exercising such authority, that member is not a fellow-servant of the others. *Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288; *Illinois Southern Railway Co.* v. *Marshall,* 210 id. 562.

The statement of the law last made is not in conflict with the authorities cited by appellant. Thus, in *Chicago and Alton Railroad Co.* v. *Keefe,* 47 Ill. 108, where the plaintiff was working as an employee of the railroad company on a construction train and was injured through the negligence of the engineer in starting the engine of the train without giving the preliminary signal and it was held that there could be no recovery because the engineer and plaintiff were fellow-servants, the injury did not result from the exercise of any authority conferred upon the engineer to control or direct the movements of plaintiff or other persons working on and about the train. The same is true of the case of

*Meyer* v. *Illinois Central Railroad Co.* 177 Ill. 591, which is relied upon by appellant as controlling the case at bar. In that case it appeared that the fireman was injured by reason of the negligence of the conductor in failing to stop the train at a station, in accordance with orders received by the latter from the train dispatcher. In disposing of the case it was, among other things, said (p. 596) : "The accident did not occur on account of the conductor's exercise of any authority over the appellant [the injured servant] which the appellant, by virtue of his inferior position, was bound to obey under penalty of discharge, but the accident resulting from the negligence, if any, was one that might have happened if any other person than the conductor had been intrusted with simply running the train and setting the brakes in connection with the fireman and others, without any control over the fireman." Clearly this case does not support appellant's contention that, as a matter of law, the members of a switching crew or the members of a train crew are always fellow-servants.

The appellant next contends that it appears from the evidence, without contradiction, that the signal given by O'Brien to back the train was not the exercise of any authority conferred upon him by appellant to control and direct the movements of the other members of the crew, but was given by him in the performance of the work in which he was then engaged as a switchman with the other members of the crew, and that the particular act of negligence which caused the injury was therefore the act of O'Brien as a fellow-servant.

It has been frequently decided by this court that the question of the relationship existing between two servants of a common master is ordinarily a question of fact, and that it only becomes a question of law when the facts are conceded or are beyond dispute, and when the evidence, and the legitimate inferences to be drawn therefrom, are such that all reasonable men will agree that the relation is that of fel-

low-servants. (*Chicago and Eastern Illinois Railroad Co.
v. Driscoll,* 176 Ill. 330; *Norton Bros.* v. *Nadebok,* 190 id.
595; *Slack* v. *Harris,* 200 id. 96; *Illinois Southern Railway
Co.* v. *Marshall,* 210 id. 562; *Illinois Steel Co.* v. *Ziem-
kowski,* 220 id. 324.) It is true that in this case there is
no direct denial of certain testimony introduced by appel-
lant, to the effect that, in general, the foreman of a switch-
ing crew, in addition to acting as foreman, performs the
same duties as the switchman or helpers of the crew; that
in giving or repeating signals to the engineer there is no
superiority of one member of the crew over another; that
the foreman takes signals from and gives signals to the
other men, and that it is his duty to obey the signals given
to him by the other men just as much as it is the duty of
the other switchmen to obey the signals given by him; that
they all co-operate together in the movement of the train;
that the foreman is required by the rule and customs of the
company to transmit and repeat the signals that the other
members of the crew give to him; that it makes no differ-
ence as to whether the foreman or one of the helpers origi-
nates a signal to move an engine; that neither has more
power in that respect than the other; that it is the duty of
the engineer to move the engine according to the signals
received, whether such signals come from the foreman or
from one of the switchmen. On the other hand, however,
Charles H. Motsett, appellant's general yard-master, called
as a witness by appellant, testified: "The duties of the fore-
man are a good deal the same as the duties of a conductor
on the road. He is the captain of a crew. * * * He is
over the engineer in the operation of the train. * * *
When he goes to an independent house, like an elevator, he
will go in there and inquire how many cars they have for
his line. Then he goes out and orders the movements of
the crew to accomplish that work. He is in all respects, so
far as the train and switching is concerned, in command,
like a captain. They all obey his orders to that extent.

\* \* \* He earns more money than the other members of the crew. \* \* \* All the orders given to that crew are given to him and he gives them to the crew. \* \* \* After backing into the elevator, if a foreman comes back, he orders the engine to back in there, to couple on the cars, and when everything is all right, he thinks, he orders them to go ahead, with a signal. \* \* \* He is the man who decides what shall be done and what shall not be done, and no man in his crew has a right to order him. He is not required to obey any man in his crew, but a man in his crew is required to obey him."

We would have no hesitation in declaring that O'Brien was a fellow-servant of the other members of the crew when he was engaged in performing the manual work of coupling or uncoupling cars, in setting or releasing the brakes of the cars, in giving signals to the engineer or other members of the crew when he desired to inform them that he had completed some manual work in and about the switching, or in transmitting signals from one member of the crew to another. All of those duties rested upon Chapman and Wishart, and when performed by O'Brien were done in the same capacity as when performed by either of the other two men. The signal complained of in this case, however, was not such a signal as either Chapman or Wishart would have been authorized to give. Under like circumstances, neither of those men would have had any authority or right to signal the engineer to back the train without having first received a signal from the person adjusting the couplers, indicating that the same were adjusted and that such person was out of danger. O'Brien, acting as a fellow-switchman, would have had no more authority in that regard than either of the other men. O'Brien, however, was acting in a dual capacity. Some of his acts were done as vice-principal; others as a fellow-servant of the other members of the crew. As fellow-servant he had no authority to give

the signal which he did give; as vice-principal, having complete control over the members of the crew and the movements of the train, as the evidence tends to show, he had authority to order the engineer to back the train without waiting for a signal from Chapman. While as a fellow-servant, at the time in question, he would only have had authority to transmit to Wishart a signal to back the train when he received such a signal from Chapman, (and his negligence in transmitting such signal would then be that of a fellow-servant,) as foreman he possessed authority to originate signals or orders concerning the movements of the train, without regard to whether he had received any signal from another member of the crew. The accident did not result from any negligent signal given by the foreman upon performance of a task by him which might have been performed by another member of the crew and the completion of which would have properly led the person performing the task to give a signal for moving the engine. Under these circumstances we cannot hold that all reasonable men will agree that O'Brien was acting in the capacity of a fellow-servant of Chapman when he gave the signal to back the train. In our judgment the question whether that particular signal was given in his capacity as vice-principal or in his capacity as fellow-servant was a question of fact for the jury. *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 207 Ill. 9.

No other reason is presented by appellant in support of its contention that the trial court erred in refusing to direct a verdict in its favor.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*