THE EAST ST. LOUIS CONNECTING RAILWAY COMPANY

*v.*

JESSE MEEKER.

*Opinion filed October 23, 1907.*

1. RAILROADS—*company should not suddenly increase hazard of servant's position.* Where a switchman engaged in uncoupling cars is ordered by the foreman of the crew, because of a defective coupling-rod, to cross over between the moving cars and uncouple them on the opposite side, it is the duty of the company, through its foreman, not to increase the hazard of the switchman's dangerous position by signaling the engineer to suddenly stop the cars before the switchman had been given time to uncouple the car and reach a place of safety.

2. SAME—*when questions of assumed risk and contributory negligence are for the jury.* Whether a switchman was guilty of contributory negligence or assumed the risk of injury, and what was the proximate cause thereof, are questions of fact for the jury, under evidence that, contrary to the usual custom of stopping a train when cars could not be uncoupled with the lever on the right side, the foreman ordered the switchman to cross over between the moving cars and then gave the engineer a signal which caused him to suddenly stop the train before the switchman could uncouple the car and reach a place of safety.

3. SAME—*when switchman and foreman of switching crew are not fellow-servants.* While the foreman of a switching crew and a switchman belonging to the crew may at times be engaged in duties which bring them into the relation of fellow-servants, yet in a matter requiring the exercise of authority by the foreman and obedience by the switchman the relation of fellow-servants, as to such matter, does not exist.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on writ of error to the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

This is an action on the case commenced in the city court of East St. Louis by the appellee, against the appellant, to recover damages for a personal injury alleged to

have been sustained by him while in the employ of the appellant as a member of a switching crew in its yards at East St. Louis, through the negligence of the foreman of the switching crew of which he was a member, in consequence of which he was thrown from a coal car to the track between the cars of a moving train, and run over and so injured as to necessitate the amputation of both legs and his left arm.

The case has been twice tried. The first trial resulted in a verdict and judgment for the appellee in the sum of $25,000, which judgment was reversed, on appeal, by the Appellate Court for the Fourth District for errors in two of the appellee's given instructions. The second trial resulted in a verdict and judgment in the same amount, which was affirmed on appeal to the Appellate Court for the Fourth District for the sum of $15,000, after the appellee had, by direction of that court, to avoid a reversal, consented to a *remittitur* of $10,000, and the case is brought to this court by the defendant by a further appeal.

The case was tried, upon the first hearing, upon an amended declaration which contained six counts, all of which counts were eliminated upon the second trial but the first and second, which, in substance, are as follows:

*First count*—For that whereas the said defendant was on, to-wit, April 10, 1903, possessed of and operating certain locomotive engines, cars, trains of cars, railroad tracks and railroad yards in or near the city of East St. Louis, in St. Clair county, Illinois, and on the said date defendant was engaged in switching certain railway cars by means of a certain locomotive engine, which said engine and train of cars were in charge of a night switching crew of defendant, which crew, including plaintiff, was under the direct supervision and control of a certain foreman by the name of Dwyer, who was not then and there a fellow-servant of plaintiff, and plaintiff was then and there in the employment of the said defendant as a member of said switching crew

in the capacity of switchman, it being the duty of plaintiff to couple and uncouple cars and to do the work usually and ordinarily done by a switchman of a switching crew, and plaintiff was then and there inexperienced in said work and was unfamiliar with the hazards and dangers incident thereto; that one of the couplers with which the said cars were coupled and which said plaintiff was attempting to operate was defective and out of repair, so that said cars could not be uncoupled from the side on which plaintiff was working, and that, in obedience to the direct and specific order of the said foreman, who then and there had authority to direct and order the plaintiff in and about said work, plaintiff got upon one of said cars and crossed over the same to uncouple said cars from the opposite side, and said foreman then and there knew, or should have known, that to suddenly check the motion of said moving cars while the plaintiff was uncoupling said cars, or before he had fully regained his balance after having uncoupled the same, would necessarily place plaintiff in a perilous and very dangerous position, and would in all probability cause him to fall upon said railroad tracks in front of said cars; that while plaintiff was attempting to uncouple said cars, or after having just uncoupled the same, and while in the exercise of reasonable and ordinary care and caution for his own safety, the said foreman of the defendant negligently and carelessly signaled and caused the engineer in charge of said locomotive engine to suddenly check the motion of said locomotive engine and cars thereto attached, which caused the said cars to jerk or jolt, thereby throwing said plaintiff from said car to the ground there and upon the tracks over which said cars were being propelled, and some of said cars then and there ran over said plaintiff, thereby crushing, mashing and mangling said plaintiff's legs and left arm so that it became necessary to amputate both of said legs and said arm, whereby said plaintiff was seriously and permanently injured, and became sick, sore, lame and disordered, and so

remained from thence hitherto, and thereby plaintiff suffered great pain of body and mind, and will continue so to suffer through his entire lifetime, and has lost a large amount of wages and has been deprived of his means of livelihood, and has expended and will expend a large amount of money for nursing, medicines and medical attention in endeavoring to be cured of said injuries, which said injuries were directly and proximately caused by the negligence of the foreman in carlessly causing the engineer to suddenly slacken the speed of such locomotive engine and cars thereto attached while plaintiff was attempting to uncouple said cars, or was in the act of regaining his balance after having uncoupled same, in obedience to a direct and specific command and order of said foreman.

*Second count*—For that whereas, also, the said defendant, on the date aforesaid, was possessed of and operating certain other locomotive engines, cars and trains of cars, railroad tracks and railroad yards in or near the city of East St. Louis, in St. Clair county, Illinois, and was on the date aforesaid engaged in switching railway cars by means of a certain locomotive engine, which said engine and train of cars were in charge of a certain night switching crew of defendant, which said crew, including plaintiff, was under the direct supervision and control of a certain foreman by the name of Dwyer, who was not then and there a fellow-servant of the plaintiff, and plaintiff was then and there in the employment of the said defendant as a member of said switching crew, in the capacity of a switchman, it being the duty of the plaintiff to couple and uncouple cars and to do the work usually and ordinarily done by a switchman of a yard switching crew, and plaintiff was then and there inexperienced in said work and was unfamiliar with the dangers and hazards incident thereto; that occasionally couplers by which the cars were uncoupled would become out of repair on the working side, so that the same could not be used or the cars uncoupled, and it would thus be-

come necessary to uncouple said cars from the opposite side, and it was, under such circumstances, great negligence in a foreman of a switching crew to order or knowingly permit the switchman to get upon the cars and uncouple the same therefrom on the opposite side while in motion, and plaintiff did not then know of the dangers and hazards incident to the uncoupling of cars in this manner; that on the date aforesaid, at night time, it became and was the duty of plaintiff to uncouple certain cars then and there being pushed and propelled in said yards by a certain locomotive engine, and plaintiff was unable to uncouple said cars on the regular and proper side for uncoupling the same on account of a certain coupler being out of repair, and said foreman then and there wrongfully, negligently and carelessly ordered and directed plaintiff to cross over said cars while in motion and uncouple said cars for a certain car on the opposite side while in motion, and plaintiff, in obedience to said direct and specific order and command of his superior, which order and command he was then and there bound to obey, and while in the exercise of ordinary care and caution for his own safety, got upon one of said cars, crossed over to the opposite side thereof and uncoupled said cars from said side while in motion, and while uncoupling the same, or just after having uncoupled the same, the speed of said cars was suddenly slackened, which caused a jolt or bump, and thereby plaintiff was thrown off of said car to and upon the ground there and upon the tracks over which said cars were being propelled, and some of said cars then and there ran over plaintiff, thereby crushing, mashing and mangling plaintiff's legs and left arm so that it became necessary to amputate both of said legs and said arm, whereby plaintiff was seriously and permanently injured, and became sick, sore, lame and disordered and so remained from thence hitherto, and thereby plaintiff suffered great pain of body and of mind and will continue so to suffer during his entire lifetime, and the plaintiff has lost a large amount of

wages and has been deprived of his means of livelihood, and has expended and will expend a large amount of money for nursing, medicines and medical attention in endeavoring to be cured of said injuries, which said injuries were directly and proximately caused by the careless and negligent order of said foreman, Dwyer, in directing and commanding the plaintiff to get upon and cross over to the opposite side of one of said cars and to uncouple therefrom certain of said cars while in motion, to the damage of the plaintiff in the sum of $50,000, and therefore he brings his suit, etc.

There is little conflict in the evidence, which fairly tends to show that the appellee, on the 10th day of April, 1903, was in the employ of the appellant as a member of a switching crew, consisting of an engineer, fireman, foreman, two switchmen and a pin-puller; that appellee had been in the employ of the appellant from the previous fifth day of October; that for the first three months he was an extra man and only worked a part of the time; that for the next three months he worked usually as a switchman but occasionally as a pin-puller; that the switching crew to which he belonged worked at night, and that the appellee had worked as a pin-puller all the night of the ninth of April and from 6:30 P. M. to the time he was injured, which was at eleven o'clock P. M. of the night of the 10th; that it was the duty of appellee, when acting as a pin-puller, to pull the coupling pins and cut the cars loose as they were being run over the lead track to different switches; that the switch tracks in the yard where appellee was injured ran north and south and at their southern extremity connected with the main lead track running north-west and south-east; that at the southern extremity of said switch-yard a single track runs south across Cahokia creek. In carrying on the work of switching each car was marked in a way to indicate which switch it was to go upon. The cars thus marked were then pushed ahead of the engine toward and over the lead track with such rapidity that when the speed was suddenly

checked by the application of the brake upon the engine, sufficient momentum had been acquired by the head car, which had been formerly uncoupled from the train by the pin-puller, to go upon the switch, which had been adjusted to receive it by a switchman, without the application of other force. The usual method employed by the company in its switch yard to uncouple cars when being thus handled, was for the pin-puller to go upon the moving cars on the right-hand side and after the cars were in motion to pull the coupling pin between the cars to be detached from the rest of the train, and when the cars had attained sufficient speed to kick the car in upon the switch and to the place where it was sought to be placed, the foreman, who also worked upon the right-hand side of the train, would signal the engineer to apply the brake, and the car detached would then go forward upon the switch prepared for it by a switchman. The cars were equipped with what are called "Janney automatic couplers," and when the cars are connected they are about four feet apart. They were uncoupled by pulling a lever at the end of the car, located near the bottom of the car and about one foot from the side. The lever, which was perpendicular, was attached to a horizontal rod which operated the coupler. On the side of each car, near said lever, was an iron stirrup and hand-hold. On the night of the accident, at about eleven o'clock, the engineer took seven cars from track No. 9, on the east side of the yards, north of Cahokia creek, and pulled them south beyond the end of the lead track and across the trestle over the creek, intending to push them back and kick the seven cars on to the proper switches. They were all box-cars but one, which was a coal car, and which was the second from the north end of the train. The night was dark, with a drizzling rain, and the headlight of the engine came close up against the end of the box-car. The car at the north end was to be run in on switch No. 6, which was some distance from track No. 9, and the coal car next to it was to

be let 'in on a different track. As the train started up appellee got on the coal car while it was north of the trestle, and, standing in the stirrup on the right-hand side of the car, tried to pull the pin with the lever on that car. At that time the engineer was in his cab on the right-hand side, and Dwyer, the foreman, was standing a few feet north of the second switch, on the right-hand side of the train. Hennebery, one of the switchmen, was at the third switch north of the bridge over the creek, standing on the left-hand side of the track. The switches were from sixty to seventy feet apart. After pulling at the lever several times without effect appellee discovered that it was broken, and as he approached Dwyer he called to him that "the damned old thing is broke," when Dwyer called back to him to "hip over," which expression was shown by the evidence to mean to go on the other side of the car. Appellee then went over to the other side of the car. The lever on that side to be used in uncoupling the car was not upon the coal car but upon the end of the box-car just north of the coal car. The endgate of the coal car was lying flat upon the car floor but the upright wooden stanchion that the gate closed against was standing, and appellee took hold of it with his right hand, stooped down and with his left hand reached over and took hold of the lever on the box-car to make the uncoupling. He pulled the lever, when the car upon which he was riding jerked suddenly and he fell forward upon the track and three cars of the train passed over him. The jerking of the train was caused by the application of the brake, made by the engineer in response to the signal given by Dwyer. There is evidence in the record to the effect that it was the custom of the appellant, when a car could not be uncoupled from the right-hand side by the throwing of the lever, to stop the train and make the uncoupling from the left-hand side.

The negligence relied upon as a basis of recovery in the first count is the giving to the engineer, by Dwyer, of a

signal to stop the train after he had ordered appellee to uncouple the car from the left-hand side while the train was in motion, before he had given the appellee time to make the uncoupling, and that relied upon in the second count is the giving of the order by Dwyer to appellee to "hip over" after· he knew the appellee was unable to make the uncoupling from the right-hand side, instead of stopping the train while the uncoupling was being made from the left-hand side.

J. M. HAMILL, M. V. JOYCE, and E. C. KRAMER, for appellant.

DANIEL McGLYNN, M. W. SCHAEFER, and M. W. BORDERS, for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

It is first contended that neither of the counts of the declaration upon which the case was submitted to the jury is sufficient to sustain a judgment in favor of the appellee, as it is said no facts are stated in either of said counts from the existence of which the law will imply a duty on the part of appellant to protect the appellee from the injury of which he complains. In *McAndrews* v. *Chicago, Lake Shore and Eastern Railway Co.* 222 Ill. 232, it was said, in an action on the case to recover for a personal injury three facts must be made to appear: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure of the defendant to perform that duty; and (3) an injury to the plaintiff resulting from such failure. From an examination of the averments of the first and second counts of the declaration as they appear in the statement preceding this opinion, we think it clearly appears that a duty rested upon the appellant to not stop said train until the appellee had made the

uncoupling and reached a place of safety, and that a duty rested upon the appellant not to send the appellee into a dangerous place, and while he was executing the order of his foreman, in such place, to increase the danger of the place by suddenly stopping said train. We think, therefore, the counts of the declaration upon which the case was tried sufficient to support the judgment rendered in favor of the appellee.

It is next urged that the negligence averred in the first and second counts of the declaration was not the proximate cause of the injury, as it is said the proximate cause of the injury was the negligence of the appellee in attempting to make the uncoupling while upon the coal car instead of from the stirrup of the box-car. It is also said the appellee should be barred of a right of recovery by reason of the fact that he was guilty of contributory negligence, and that he assumed the risk of being injured in the manner in which he was injured. We think these positions of the appellant entirely ignore the fact that there is evidence in this record which tends to show that the usual method of uncoupling when the uncoupling could not be made from the right-hand side of the train was to stop the train and make the uncoupling from the left-hand side, and that the appellee notified the foreman that the lever upon the right-hand side of the coal car would not work and the foreman then ordered him to go upon the other side, and that while he was making the uncoupling upon the left-hand side the foreman gave the engineer the signal to stop the train before the appellee had time to make the uncoupling and assume a place of safety, and that by reason of such signal the train was suddenly stopped and the car upon which the appellee was standing was jerked, and he, by reason of that fact, was thrown from the car and injured. The questions of proximate cause, contributory negligence and assumed risk usually are questions of fact to be determined by the jury, and in this case, in view of the evidence, we think those questions were prop-

erly left to the jury, and that this court cannot say, as a matter of law, that the sending of appellee to the left side of the car, and then ordering the train suddenly stopped, was not the proximate cause of the injury, or that the appellee, by attempting to uncouple the car while standing upon the coal car, was guilty of such contributory negligence as to defeat a recovery, or that he assumed the risk of being injured in the manner in which he was injured when he entered the employ of the appellant, as the cause of his injury was the result of the improper order of the foreman in ordering the appellee to "hip over," and then ordering the train to be suddenly stopped before he had time to make the uncoupling from the left-hand side and regain a place of safety. We think, therefore, the court did not err in declining to take the case from the jury for those reasons.

It is next urged that appellee and the foreman, Dwyer, were fellow-servants, and that although it be conceded that Dwyer was guilty of the negligence which caused the injury of appellee in signaling the engineer to stop the train before appellee had time to make the uncoupling, there can be no recovery. This contention of appellant ignores the negligence averred in the second count of the declaration, which is said to consist of the action of Dwyer in giving a negligent order to the appellee to "hip over," in disregard of the established custom in appellant's yard to stop the train when an uncoupling was to be made from the left side of the car. The question whether the servants of the common master are fellow-servants is usually a question of fact, and where, as here, the master has conferred upon a member of a class of workmen carrying on a particular branch of his business, authority to control or direct the movements of the men under his charge, while in the exercise of such authority the relation of fellow-servants does not exist. (*Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288.) In *Chicago, Rock Island and Pacific Railway Co.* v. *Strong,* 228 Ill. 281, the foreman of a switching crew and a switchman were

held not to be fellow-servants; and in *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 207 Ill. 9, it was held whether an assistant yard-master, who was acting as vice-principal of the railroad company, was a fellow-servant of the members of a switching crew in giving a signal to the crew to move a train of cars was a question of fact for the jury. The trial court, we think, properly submitted the question of whether Dwyer and appellee were fellow-servants to the jury.

It is also insisted that there is a material variance between the declaration and the proofs in this: that the counts of the declaration upon which the case was tried averred that the appellee was injured while he was upon the left side of the coal car uncoupling the box-car therefrom, while the evidence showed he was upon the north end of the coal car. The real contention of the appellant is, not that the appellee should have been upon the outside of the left side of the coal car, but that he should have been in the stirrup upon the left side of the box-car in front of the coal car at the time he attempted to make the uncoupling. The undisputed evidence is, that in making an uncoupling the pin-puller remains upon the car attached to the train from which the car is cut, otherwise he would be carried away with the car cut from the train. We think, therefore, the jury were justified in finding, from the evidence, that when Dwyer ordered appellee to "hip over," he meant that he should get on to the coal car and pull the pin with the lever on the left side of the box-car, leaving it to appellee to select the place upon the coal car where he would stand while in the act of pulling the pin, as there was no stirrup and handle upon the left side of the north end of the coal car; and that the language used in the first and second counts of the declaration does not signify that appellee was upon the outside of the left side of the coal car when he attempted to pull the pin and uncouple the box-car, but that he was upon the left side of the car, which language would

as well apply to the left side of the coal car inside the car, as to the left side of the coal car outside the car. We do not think there was any material variance between the declaration and the proofs.

It is finally urged that the court erred in giving to the jury appellee's third instruction and in modifying two and in refusing to give one of appellant's instructions, and that the court erred in admitting evidence on behalf of the appellee and in rejecting evidence on behalf of appellant. We have examined these contentions and do not think the court committed reversible error in instructing the jury or in ruling upon the evidence. The appellee's third instruction announced the rule which should govern the jury in fixing the amount of appellee's damages in case the jury found in his favor, and is not subject to the criticism that they were not to be confined to the evidence. The modified instructions did not change the rules of law announced therein, but only tended to bring them into harmony with the entire series of instructions offered upon behalf of the appellant, and the instruction refused was covered by other instructions given to the jury, and the rulings upon the evidence were upon immaterial matters which in no way could have affected the result of the suit.

The law governing this case is well settled, the only difficulty being its application to the facts in proof. There was but little opportunity for controversy over the facts in the trial court, and the facts and the inferences to be drawn therefrom having been found by the jury in favor of the appellee, and the findings of the jury having been approved by the trial and Appellate Courts, this court is powerless to disturb such findings.

The judgment of the Appellate Court will therefore be affirmed.                    *Judgment affirmed.*