**John D. Casey, Administrator, Appellee, v. Kelly-Atkinson Construction Company, Appellant.**

**Gen. No. 14,187.**

1. TRIAL—*when remarks of counsel not improper.* To refer to a particular failure to exercise ordinary care as "almost criminal" is not improper.

2. NEGLIGENCE—*effect of concurring causes.* If the defendant is guilty of negligence without which an accident would not have happened, the fact that it would not have happened except for another intervening cause which was an act of God, or which was a pure accident for which no negligence could be imputed to any one, does not relieve the negligent party from liability.

3. NEGLIGENCE—*when question to be determined by jury.* Held, that it was for the jury to determine whether it was negligence for

the defendant to allow a traveler used in connection with bridge construction to remain unfastened and unsecured on tracks and rails in a locality subject to storms.

4. NEGLIGENCE—*what does not excuse.* A custom does not excuse negligence.

5. INSTRUCTIONS—*approved form of, as to liability of master for acts of vice principal.* The following instruction upon this subject approved:

"The court instructs the jury that where a master confers authority upon one of his employes to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and is not a mere fellow-servant, and all the commands, if any, given by him, within the scope of his authority, are in law the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, it is in law the same as though the master itself was guilty of such conduct."

6. VERDICT—*when not excessive.* *Held,* that a verdict for $6,000 rendered in an action for death caused by wrongful act is not excessive where it appeared that the plaintiff's intestate was at the time of his death a young man who had fulfilled the promises of his boyhood, who had been temperate and industrious, was evidently ambitious and rising in his calling, and who had been the principal support of his mother and younger brothers.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed February 15, 1909.

**Statement by the Court.** The judgment appealed from in this cause is for $6,000. It was obtained June 8, 1907, in an action brought in the Superior Court by the administrator of Albert Miller, deceased, against the Kelly-Atkinson Company, a corporation, for causing by negligence the death of his intestate, Miller.

The original declaration was in two counts, to which a third was afterward added by leave of court.

The first count alleges that on July 8, 1905, the defendant was a structural iron contractor and was building a bridge across the Mississippi river at Thebes in Illinois; that it had in its employment a large number of men, among them the deceased, Miller, who was a structural iron worker, earning about four dollars a

day; that the defendant used upon the false work in the construction of said bridge, at a great distance above the ground, a movable engine or car called a "traveler," by means of which the iron and other material used in the construction of the bridge was raised to where it was to be used; that at the time of the accident and prior thereto, on July 8, 1905, there was a high wind blowing; that in consequence if the traveler was not properly and securely fastened, it was liable to start and run along on and fall from the false work, and thereby kill or injure the deceased or other of the defendant's servants; that all these facts, the defendant knew, or, by the exercise of ordinary care, would have known; that by reason of the premises it was the duty of the defendant to have exercised ordinary care toward so securing or fastening said traveler; that, disregarding this duty, the defendant failed and neglected to fasten and secure the traveler; that the deceased did not know of this; that as a direct result and in consequence of the defendant's failure and default "said traveler as a result of the high wind then blowing, started to run along and upon and fell from said false work a great distance to the ground, and it then and there struck and knocked deceased, who, as plaintiff alleges, was then and there in the discharge of his duty and exercising ordinary care and caution for his own safety in working upon said false work, a great distance to the ground," killing him.

The second count is similar, but the allegation of the defendant's duty is that it was its duty, through its servants, whom the plaintiff alleges were not fellow-servants of the deceased, to have securely fastened the traveler, etc.

The third or additional count makes an allegation in these words: "that at the time and place aforesaid the condition of the weather indicated that a high wind was likely and liable to soon be blowing, and that in the event of such a high wind blowing, if said

traveler was not properly and securely fastened, as it was not at that time, it was liable to and there was great danger of its starting to run along and upon and falling from said false work, and if it should thus start to run along and upon and fall from said false work, it was likely and liable to injure or kill the deceased or other of the defendant's servants, all of which facts, the plaintiff alleges, the defendant, through its foreman, * * * knew, or by the exercise of ordinary care in that behalf would have known, and by reason of the premises it was the duty of the defendant, through its said foreman, to have exercised ordinary care toward so securing or fastening said traveler as to prevent it from starting and running upon and falling, * * * but the defendant, through its said foreman, not regarding its duty, * * * negligently failed and neglected to so fasten and secure said traveler, * * * *and as a direct result and consequence of the defendant's said failure and default and of a high wind which plaintiff alleges shortly afterwards started to blow,* said traveler * * * started to run upon and along and fall from said false work to the ground,'' etc.

Each count contained the necessary allegations of representation and of kinship of beneficiaries.

The defendant corporation pleaded the general issue to the first two counts and the general issue and the statute of limitations to the third count. To the statute of limitations the plaintiff demurred and the demurrer was sustained, whereupon the defendant elected to stand by its said plea. The cause was submitted to a jury, which found a verdict for the plaintiff in the sum of six thousand dollars.

After a motion for a new trial and a motion in arrest of judgment had been overruled by the court, judgment was entered on the verdict and the defendant appealed.

In this court the assignments of error cover the reasons alleged in the motion for a new trial, the denial

of said motion, and the denial of the motion in arrest of judgment. They include the proposition that the trial court erred in sustaining the plaintiff's demurrer to the defendant's plea of the statute of limitations to the third or additional count of the plaintiff's declaration; erred in rulings on evidence and on instructions; erred in denying defendant's motion for a peremptory instruction taking the case from the jury; and erred in not granting a new trial on the ground of the inconsistency of the verdict with the law and the evidence, on the ground that the damages were excessive and on the ground that the plaintiff's attorneys made improper remarks to the jury. The appellee assigns cross-errors, alleging errors made by the trial court against the appellee in its rulings on evidence and instructions.

SCHUYLER, JAMIESON & ETTELSON, for appellant; D. J. SCHUYLER, of counsel.

JAMES C. MCSHANE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case, after much consideration of and deliberation over the record, we have determined that the verdict and the judgment based on it should not be disturbed by us. The only question in the case, the answer to which seems to us doubtful, goes to the entire liability of the defendant under the facts proven.

The objections made to the remarks of plaintiff's counsel to the jury seem to us hypercritical. It was not improper argument to call an alleged want of care "almost criminal," nor did it warrant the reply which the defendant's counsel was excited to make. If the allegation of want of ordinary care failed of proof (and that was the question to be tried), the allegation of wrongful action fell with it. If there was want

of ordinary and reasonable care on the part of the foreman, it is very far from calling him a "murderer" to say that such want of care was "almost criminal." No juryman intelligent enough to be a juryman, would have his passions inflamed or his reason led captive by such a remark in an argument.

Nor, under the rules which have been laid down in similar cases in this state, can the verdict be considered excessive if any liability exists. The damages which may be estimated on the removal from his family of a promising boy have been reckoned as high substantially. Here the unfortunate victim of the accident was an exemplary young man, who had fulfilled the promises of his boyhood, who had been temperate and industrious, and evidently ambitious and rising in his calling, and who had been the principal support of his mother and younger brothers.

Complaint is made of the following instruction which was given at the request of the plaintiff:

"The court instructs the jury that if you believe from the evidence that the defendant was guilty of negligence as charged in the declaration, and that such negligence upon its part contributed to the accident in question, and that the accident would not have occurred except for such negligence, if any, upon the part of the defendant, then you are instructed that the fact that the storm spoken of by the witnesses also contributed and helped to cause or was the principal cause of said accident is not a defense in this suit."

Counsel for defendant say that this seems to them to present the doctrine of "comparative negligence," now repudiated in Illinois. We do not assent to this position. The instruction is based on an entirely different principle. It is that if the defendant was guilty of negligence without which the accident would not have happened, the fact that it would not have happened except for another intervening cause which was an act of God, or which was a pure accident for which

no negligence could be imputed to any one, does not relieve the negligent party from liability.

This proposition, we think, is a correct statement of the law. It does not differ in principle from the one applicable to joint tort-feasors as laid down in Cooley on Torts, vol. 1, pp. 226-227.

"When the contributory action of all accomplishes a particular result, it is unimportant to the party injured that one contributed much to the injury and another little; the one least guilty is liable for all because he aided in accomplishing all." See also: City of Joliet v. Shufeldt, 144 Ill. 403; St. L. B. Co. v. Miller, 138 Ill. 465-476; Siegel, Cooper & Co. v. Trcka, 218 Ill. 559-562; Thompson on Negligence, vol. 1, sec. 68, p. 71.

We do not think that instruction six tendered by the plaintiff and given by the court was erroneous as charged. It is as follows:

"The court instructs the jury that where a master confers authority upon one of his employes to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master, and is not a mere fellow servant, and all the commands, if any, given by him, within the scope of his authority, are in law the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, it is in law the same as though the master itself was guilty of such conduct."

This instruction was not erroneous. Chicago, R. I. & Pac. Ry. Co. v. Strong, Admr., 228 Ill. 281; Chicago Terminal Transfer R. R. Co. v. Reddick, 230 Ill. 105; Chicago, R I. & Pac. R. R. Co. v. Rathneau, 225 Ill. 284.

Under this instruction the jury were left to determine the question whether or not Brown, who was foreman in charge of the erection, and who says, "My

directions were carried out whichever way I said the work was to be done,'' was or was not a vice-principal rather than a fellow-servant of the plaintiff's intestate. We cannot see how any other conclusion on this point than that which inheres in their verdict was possible for them.

We think that there was no reversible error in the refusal of the several instructions tendered by the defendant which were refused. Some were inaccurate and some were covered by others given. We cannot discuss them at length without unduly protracting this opinion.

The defendant's fifth refused instruction is no less objectionable than that disapproved by the Supreme Court in Evanston v. Richards, 224 Ill. 444.

Nor does an examination of the evidence lead us to the belief that any reversible error crept into the rulings of the trial judge in admitting or excluding evidence.

There is nothing in the evidence to raise any reasonable doubt that the plaintiff's intestate was killed by the falling of the traveler, nor that he was then in the exercise of all due care for his own safety.

But the serious question in this case arises on the position taken by the defendant, that the jury should have been peremptorily instructed, after the evidence was all in, to find a verdict of not guilty, and the alternative position that, if such an instruction would not have been justifiable, nevertheless the weight of the evidence was so clearly and manifestly in favor of the defendant that the judgment against it should be reversed without a remandment of the case.

If the contentions of the defendant are good at all, we think they are good to the full length indicated. And we think, moreover, that there are weighty considerations in their favor. Certainly had the jury come to a conclusion contrary from that shown by their verdict, we should not have disturbed it. But are we justified in disturbing the verdict for the plaintiff, rend-

ered under instructions which told the jury that to warrant the plaintiff's recovery the foreman or vice-principal must have, by the exercise of ordinary care, foreseen the effect of leaving the traveler unsecured and the approach of the wind storm, and had the power to have secured the traveler in the usual and ordinary way? And under instructions which told them that although they might believe from the evidence that the accident in question was occasioned by the traveler's being blown from the tracks on the false work, yet if they believed also that said storm was sudden and of such violence and character that the defendant and its employes in charge of said work, by the exercise of ordinary care, could not have foreseen or anticipated the same or the consequences thereof, they must find for the defendant?

These instructions certainly were as favorable to the defendant as it was entitled to. We are not sure, however, but that they were more so.

The negligence of the defendant charged in the first count was substantially that at the time of the accident there was a high wind blowing; that it was the duty of the defendant to have so fastened the traveler that this high wind could not move and overthrow it, and that this precaution was not taken.

The second count does not vary this much; the third, however, puts the charge of negligence on the ground that before the accident the conditions of the weather indicated that "a high wind was likely and liable soon to be blowing;" that by the exercise of ordinary care the defendant would have known this, and it therefore was its duty to so securely fasten said traveler that it should not run and fall, to the injury of the workmen—which duty it failed to perform.

There was evidence tending to show that the wind storm during which the traveler started to run, with the fatal results which ensued, was one which could have been foreseen by the foreman in time to have fast-

ened or tied the traveler to the false work, as it was usually fastened when left for the night. There was, however, evidence to the contrary which seems to us of greater weight,—evidence that the storm was sudden, that the development from a pleasant day, through gathering clouds to a sudden gale, was not of a nature that would naturally warn one of an unusual danger of the overthrow of the traveler, nor was gradual enough to have given opportunity, between the time when the danger did actually appear imminent and the time of the accident, efficiently to fasten the traveler with the means at hand. But we question whether we are obliged to pass on the weight of this evidence as compared with that which tends to establish the contrary.

The instruction indeed which we have before alluded to (defendant's instruction VI) tells the jury that the plaintiff, to recover must prove that the foreman saw the approach of the windstorm that blew the traveler from the false work in time to have secured it, and it is to be presumed, therefore, that the jury believed this from the evidence, as well as the other things they were told were necessary to the plaintiff's recovery.

But we are of opinion that the instruction goes too far, and that under the declaration which in its first two counts says, in substance, that a high wind was blowing at the time of the accident (which is certainly true), and that the traveler was liable to run along and fall from the false work if it was not fastened—which the defendant knew—and that it was therefore the duty of the defendant to keep it fastened and secured, which duty it neglected, to the damage of the plaintiff, by the death of his intestate,—it was a question for the jury whether it was negligence to allow the traveler to remain unfastened and unsecured on the tracks and rails on which it stood during a sultry summer afternoon, in a locality subject to such storms as came. In other words, it was for

the jury to say whether in the exercise of ordinary care the foreman should not have so reasonably anticipated or foreseen that a windstorm *might* suddenly and naturally arise, endangering the stability of the traveler constructed and situated as it was, as to make it negligence for him to leave it in that condition at the time in question.

The traveler was a large and very open structure, fifty-six feet wide, sixty-six feet long and ninety feet high, and stood upon car wheels under each corner, the wheels resting on a rail track. It stood on false work about seventy feet above the level of the earth. It presented 3,500 square feet to the presence of the wind. It weighed about 120 tons, and with that amount of surface exposed to the wind, standing upon wheels and rails, was it not dangerous to leave it unsecured at any time when it was not in actual motion? It was fastened at night, as the foreman testified, because they knew a wind might come up and wreck it. We do not understand that the traveler had been in motion that day but once. It had been run 300 feet west in the morning. To move it the chains which had fastened it during the night had been removed. When it stopped it was not refastened or secured in any way, except by chucks under the wheels, which proved wholly insufficient to prevent its motion when the wind struck it. There was evidence tending to show that the usual custom was to leave the traveler, during the day time and when it was liable to be called into motion along the track at any time during the day, thus unsecured, except by chucks, and evidence indeed in the nature of expert opinion, that it would be inconsistent with the practicable operation of the traveler to keep it fastened by chains as in the night time, until the actual occasion for moving it came. But the only reason given for this was the time it would require of one man, or the lesser time of more, to make the fastening and to unloose

them. There was no reason in the operation of the traveler itself, which was a hoisting apparatus, which did its actual work in a stationary position, and was only movable as derricks are made movable, on occasion when the place of hoisting is to be changed. A custom does not excuse negligence. We are too much in doubt whether it was not the duty of the master, at the expense of this extra time and labor, to keep the traveler fastened up to the time that men were actually moving it; whether this duty was not neglected in this case; whether this did not violate the obligation of furnishing a reasonably safe place and machinery in and with which its men were to work; and whether this negligence, if it were negligence, is not covered by the declaration and supported by evidence competent for the jury;—to feel justified in disturbing this verdict found by the jury and confirmed by the trial court.

The judgment of the Superior Court is therefore affirmed.

*Affirmed.*